IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 09-cv-01922-LTB

ALBERTA L. HADDOCK,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

Plaintiff Alberta L. Haddock appeals Defendant's (the "Commissioner") final administrative decision denying her claim for supplemental security income under the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision in part; reverse it in part; and remand the case for further proceedings consistent with this Order.

**I. Statement of the Case**

Plaintiff applied for supplemental security income under the Act in October of 2006. Following the initial denial of benefits, a hearing was held before an administrative law judge (the "ALJ") on April 28, 2008. On August 7, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's August 7, 2008 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II. Statement of Facts

### A. Background

Plaintiff was born on November 10, 1971 and was 36 years old at the time of the Commissioner's decision. Administrative Record ("AR") 17. Plaintiff is a high school graduate who has worked in the past for short periods of time as a retail stocker, assembly line worker, and construction laborer. AR 74 & 76. Plaintiff initially alleged that she became disabled on January 1, 2003 as a result of a learning disability that rendered her "slow" and unable to understand instructions. AR 73. Plaintiff amended her alleged disability onset date to October 10, 2006 at the hearing before the ALJ. AR 22-3.

Plaintiff's educational records reflect that she was assessed with a learning disability in 1980 and that she attained a verbal IQ score of 66, a performance IQ score of 91, and a full scale IQ score of 76 on the Wechsler Intelligence Scale for Children- Revised that was administered to her in 1987. AR 27 & 96. At the time she applied for disability benefits, Plaintiff indicated that she had never undergone medical testing or received medical treatment for her learning disability or any disabling mental or emotional problems. AR 75-6.

At the Commissioner's request, Plaintiff was examined by Dr. Richard Madsen, Ph.D., on November 28, 2006. Dr. Madsen noted that Plaintiff had been diagnosed with a learning disability; attended special education classes since second grade; exhibited symptoms of depression; helped with household chores and meal preparation; and took care of herself and her three children. AR 98. On examination, Dr. Madsen found that Plaintiff's thought content was logical and relevant and that Plaintiff's motor behavior and speech were within normal limits. AR 99.

Dr. Madsen administered the Wechsler Adult Intelligence Scale - Third Edition to

Plaintiff. AR 99. Plaintiff attained a verbal IQ score of 66 (1st percentile), a performance IQ score of 79 (8th percentile), and a full scale IQ score of 70. *Id.* Plaintiff's full scale IQ score placed her in the "borderline range of measured intelligence ...indicating that she scored as high as or higher than approximately 2 percent of individuals her age who have taken [the Wechsler test]." *Id.* Dr. Madsen noted that the 13-point differential between Plaintiff's verbal and performance IQ scores was significant and that such a differential occurs more frequently in individuals with a learning disability. *Id.*

Dr. Madsen diagnosed Plaintiff with major depression and borderline intellectual functioning and assessed Plaintiff a Global Assessment of Functioning ("GAF") score of 50. AR 100. Dr. Madsen concluded that Plaintiff's ability to do work-related activities was impaired and that Plaintiff would have difficulty maintaining a regular work schedule; focusing and concentrating on work; and relating to peers, co-workers, supervisors, and the general public. AR 101.

The Commissioner also requested a psychological/psychiatric examination of Plaintiff but there were insufficient records for the state agency psychologist to assess Plaintiff's limitations. AR 102-4, 106 & 116-7.

**B. Plaintiff's Disability Hearing**

At the April 28, 2008, hearing, Plaintiff testified that she did not think she could work because she was afraid she was going to get yelled at if she did something stupid. AR 26. The ALJ asked Doris Shriver, a vocational expert, if there were jobs that an individual who was 34 years of age with no exertional limits but limited to simple, unskilled tasks with General Educational Development ("GED") levels of 1 in reasoning, math, and language was able to perform. AR 32. The vocational expert responded that such an individual could work as a final

assembler, a sorter, a housekeeping cleaner, or other cleaning type jobs. AR 32-3. The ALJ asked Plaintiff if she thought she could do a cleaning job, and Plaintiff responded that she did not know but that she was able to clean her house. AR 33.

## C. The ALJ's Decision

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 416.920(a). At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 10, 2006. AR 14. At the second step, the ALJ determined that Plaintiff had severe impairments of an organic mental disorder and an affective disorder. *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

At the fourth step of the sequential process, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but had nonexertional limitations in that she could only understand, remember, and carry out only simple instructions. AR 15. In discussing Plaintiff's RFC, the ALJ concluded that Dr. Madsen's opinions regarding Plaintiff's functional limitations were entitled to little weight. AR 16-7. After further concluding that Plaintiff had no past relevant work experience (*id.*), the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant number of jobs in the national economy that Plaintiff was capable of performing based on the testimony of the vocational expert. AR 17.

## III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal

standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995). Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed. *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

## IV. Analysis

Plaintiff raises a number of issues on appeal: (1) whether the ALJ failed to properly assess whether a Listing was met at step 3 of the sequential process; (2) whether the RFC assessed by the ALJ was supported by evidence in the record; (3) whether the ALJ failed to properly consider the opinions of Dr. Madsen; and (4) whether the ALJ erred in relying on the testimony of the vocational expert.

**A. Step 3 of the Sequential Process**

At the third step of the sequential process, the ALJ found that Plaintiff's mental impairments did not satisfy the criteria of impairment listings 12.04 (affective disorders) and 12.05 (mental retardation). Plaintiff argues that the ALJ's finding that Plaintiff did not satisfy the criteria of Listing 12.05 was in error because the ALJ only provided analysis of the criteria for Listing 12.04. In support of this argument, Plaintiff cites *Clifton v. Charter,* 79 F.3d 1007, 1009 (10th Cir. 1996), wherein the Tenth Circuit concluded that an ALJ's mere conclusory statement that a listing was not met was "beyond judicial review" and required remand.

In response, the Commissioner does not dispute that the ALJ's decision lacks specific

analysis of the criteria of Listing 12.05 at step 3 of the sequential process. The Commissioner argues, however, that such analysis is not required under *Fisher-Ross v. Barnhart,* 431 F.3d 729 (10th Cir. 2005) and that Plaintiff's reliance on *Clifton* is misplaced.

In *Fisher-Ross,* the Tenth Circuit concluded that *Clifton* did not require reversal of an ALJ's decision when the ALJ's findings at other steps of the sequential process supported the conclusion that a claimant's impairments did not meet or equal a listed impairment. *Id.* at 733. In reaching this conclusion, the Tenth Circuit noted that although harmless error analysis must be applied cautiously in an administrative review setting it was nonetheless appropriate to supply a missing dispositive finding where, based on evidence the ALJ did consider, "no reasonable administrative factfinder ... could have resolved the factual matter in any other way." *Id.* (citations omitted).

In support of its argument that the ALJ' failure to analyze the criteria of Listing 12.05 was no more than harmless error, the Commissioner emphasizes that Listing 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria [paragraphs A through D], we will find that your impairment meets [Listing 12.05]."). The Commissioner notes that this requirement mirrors the medical criteria for diagnosing mental retardation and argues that the ALJ's supported finding that Plaintiff is functioning at a higher level than mild mental retardation at step 4 of the sequential process (AR 16) precludes a determination that Plaintiff satisfies the requirements of the introductory paragraph to Listing 12.05.

It is unclear from the ALJ's decision if he was in fact applying the same definition for

mental retardation at step four of the sequential process as that contained in the introductory paragraph of Listing 12.05.  Nonetheless, in concluding that Plaintiff was functioning at a higher level than mental retardation, the ALJ relied on Dr. Madsen's diagnosis of "borderline intellectual functioning" for Plaintiff.  This diagnosis is distinguishable from Listing 12.05's requirement of "significantly subaverage general intellectual functioning."  Moreover, the ALJ also found that Plaintiff was capable of helping with household chores and caring for herself and her children.  AR 16.  "Adaptive functioning," which must be deficient under Listing 12.05, refers to how effectively an individual copes with common life demands and how well they meet the standards of personal independence of someone with similar characteristics.  Amer. Psych. Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 40 (4th ed. text rev. 1994).

Plaintiff's ability to perform household chores and care for herself and her children, as well as Dr. Madsen's diagnosis (AR 98 & 100), provide the requisite support for the ALJ's conclusion that Plaintiff did not meet the requirement under Listing 12.05 that a claimant demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning."  Taking the ALJ's decision as a whole then, remand for analysis of the criteria under Listing 12.05 would be an "unwarranted formality."  *Fisher-Ross,* 431 F.3d at 733.

**B.  The ALJ's Assessment of Plaintiff's RFC**

The ALJ concluded that Plaintiff's RFC enabled her to perform a full range of work at all exertional levels with nonexertional limits of being able to understand, remember, and carry out only simple instructions.  AR 15.  In reaching this conclusion, the ALJ gave "little weight" to Dr. Madsen's opinion that Plaintiff would have difficulty maintaining a regular work schedule; focusing and concentrating on work; and relating to peers, co-workers, supervisors, and the general public because he found that Dr. Madsen's examination of Plaintiff did not support these

conclusions. *Id.*

Plaintiff argues that since Dr. Madsen's opinion is the only medical evidence in the record, the ALJ's RFC finding is not supported by the evidence in the record. In response, the Commissioner argues that the ALJ properly discounted Dr. Madsen's opinion concerning Plaintiff's limitations because they were not supported by the findings in his report and because this opinion was but one component of the evidence considered by the ALJ. I agree that the ALJ did not err in his assessment of Plaintiff's RFC.

"[T]he ALJ, not a physician, is charged with determining a claimant's residual functional capacity from the medical record." *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004). The ALJ's determination of a claimant's RFC, however, must be supported by substantial evidence in the record. *Castellano,* 26 F.3d at 1028.

Nothing in Dr. Madsen's full report supports his conclusions that Plaintiff would have difficulty maintaining a regular work schedule or relating to others that she would encounter at work. In fact, Dr. Madsen's full report which includes a summary of his observations and examination of Plaintiff, as well as Plaintiff's educational and work history, contradict these conclusions. Of particular relevance to Plaintiff's ability to interact socially, Dr. Madsen noted that Plaintiff's "[t]hought content is logical and relevant;" that her "[m]otor behavior and speech are within normal limits;" and that she cares for her three children. AR 98-9. With respect to her ability to maintain a schedule, Plaintiff graduated from high school and her employment history though brief is devoid of any reference to a failure or inability to report to work. In fact, Plaintiff testified that she was unable to work solely because she was afraid of being reprimanded for doing something stupid and that she worked forty hours a week at her last job as a night retail stocker. AR 24 & 26.

Conversely, Dr. Madsen's conclusion that Plaintiff would have difficulty focusing and concentrating on work is supported by his full report and was taken into account by the ALJ in his assessment of Plaintiff's RFC. Specifically, the ALJ concluded that Plaintiff would be able to understand, remember, and carry out only simple instructions. Plaintiff argues that in assessing this limitation the ALJ overstepped his bounds into the province of medicine and improperly substituted his opinion for that of a physician. I disagree since this limitation is directly based on Dr. Madsen's finding that Plaintiff would have difficulty focusing and concentrating on work. *See also* SSR 85-16, 1985 WL 56855 at *3 (individual with an IQ between 70 and 79 should ordinarily be able to carry out simple instructions with supervision).

Plaintiff also attributes error to the ALJ's failure to incorporate his finding that Plaintiff has moderate difficulties in concentration, persistence and pace at step 3 of the sequential process (AR 14) into his assessment of Plaintiff's RFC. As noted by the Commissioner, however, the ALJ specifically stated that his assessment of Plaintiff's RFC reflects the limitations he found at step 3 when analyzing the paragraph B criteria under Listing 12.04. AR 15. These limitations include the ALJ's finding that Plaintiff had moderate difficulties in concentration, persistence, and pace. AR 14. Thus, the ALJ's conclusion that Plaintiff could understand, remember, and carry out only simple instructions reflects the moderate difficulties that he found she had in concentration, persistence, and pace at step 3 of the sequential process. This case is therefore distinguishable from *Frantz v. Astrue,* 509 F.3d 1299, 1303 n. 3 (10th Cir. 2007), where the Tenth Circuit stated in a footnote that on remand the ALJ should address his failure to include the moderate limitations he found at step 3 in his determination of the claimant's RFC.

**C. The ALJ's Treatment of the Opinions of Dr. Madsen**

Plaintiff's principal argument regarding the ALJ's rejection of some of the functional limitations assessed by Dr. Madsen's opinions is that the ALJ overstepped his bounds into the province of medicine and improperly substituted his opinion for that of a physician. I disagree.

For the reasons set forth above, the ALJ's rejection of Dr. Madsen's conclusions that Plaintiff would have difficulty maintaining a regular work schedule and relating to others she encountered at work was justified based on all the evidence in the record including Dr. Madsen's own report. "[A]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir. 2004). Here, however, the ALJ did not outright reject Dr. Madsen's conclusions about Plaintiff's functional limitations but instead attached little weight to these conclusions. Likewise, the ALJ did not err in failing to seek further clarification from Dr. Madsen for his opinions since Dr. Madsen's report was neither incomplete nor inadequate, *see* 20 C.F.R. § 416.919p(b), but merely inconsistent with other evidence in the record.

**D. The ALJ's Hypothetical Questions to the Vocational Expert**

Plaintiff takes issue with the fact that the ALJ's hypothetical questions to the vocational expert do not mirror the RFC he assessed for Plaintiff. Specifically, the ALJ's first hypothetical question to the vocational expert assumed an individual who was limited to simple, unskilled tasks and who had GED levels of 1 in reasoning, math, and language. AR 32. The RFC that the ALJ assessed for Plaintiff included a limitation that Plaintiff could only understand, remember, and carry out simple instructions and did not reference Plaintiff's GED levels. AR 15. Plaintiff asserts that the ALJ erred in failing to include a limitation relating to Plaintiff's ability to process instructions and in including unsubstantiated GED levels in his hypothetical question to the

vocational expert. I agree.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) (citation omitted). The Commissioner's assertion that the discrepancy between the ALJ's RFC finding that Plaintiff was capable of understanding, remembering, and carrying out only simple instructions and his assumption in his hypothetical questioning of the vocational expert that Plaintiff was only able to perform simple, unskilled tasks is nothing more than a "trivial semantics argument" is at odds with this exacting standard. Although the ALJ may well have thought the two limitations were equivalent, it is impossible to determine whether the vocational expert's answers to his hypothetical questioning would have been the same had the ALJ included an assumption about Plaintiff's ability to process instructions that mirrored his assessment of Plaintiff's RFC.

Even more problematic is the ALJ's inclusion of GED levels for Plaintiff that are unsupported by substantial evidence in the record. The Commissioner argues that the inclusion of these unsubstantiated GED levels was beneficial to Plaintiff because the ALJ attributed the lowest levels to her. As Plaintiff points out, however, however, there is no evidence that Plaintiff could satisfy the requirements for even these lowest levels which include, among other things, an ability to read 95-120 words per minute. *See* U.S. Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles,* Vol. II, Appendix C, Part III.

Since the ALJ based his conclusion at step 5 of the sequential process that there were a significant number of jobs existing in the national economy that Plaintiff was capable of performing on the testimony of the vocational expert (AR 17), remand is necessary to address the flaws in the hypothetical questions asked of the vocational expert.

## V. Conclusion

IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. The case is remanded for further proceedings consistent with this Order.


Dated: May   28  , 2010 in Denver, Colorado.

                                            BY THE COURT:

                                              s/Lewis T. Babcock
                                            LEWIS T. BABCOCK, JUDGE